UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY NOCETI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. DEPARTMENT OF AGRICULTURE, RISK MANAGEMENT AGENCY,<br><br>　　　　Defendant. | No. 2:14-cv-01177-KJM-GGH<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　This is an action for judicial review under the Administrative Procedure Act (APA) of final agency action relating to a federal crop insurance program. Plaintiff seeks judicial review of the U.S. Department of Agriculture's Risk Management Agency's (RMA) Good Farming Practices (GFP) determination pertaining to plaintiff's 2012 safflower crop.

　　　On January 20, 2016, the court held a hearing on both parties' motions for summary judgment. Plaintiff failed to appear, and Benjamin Hall appeared on behalf of defendant. On review of the motions, the documents filed in support and opposition, THE COURT FINDS AS FOLLOWS:

/ / /

1

FACTUAL AND PROCEDURAL BACKGROUND

Between January 13, 2012, and March 21, 2012, plaintiff planted 438.8 acres of safflower on his farm in the Mountain House area of the San Joaquin Valley (Tracy, CA area). ECF No. 1 at 3. Plaintiff applied for and obtained insurance for these crops from Rain and Hail Insurance Services ("Rain and Hail"), which is itself re-insured by the Federal Crop Insurance Corporation (FCIC). Id. By August 2012, however, a large portion of plaintiff's crops had failed. Id. Accordingly, on August 13, 2012, plaintiff filed a claim with Rain and Hail under his safflower crop insurance policy. Id. On August 18, and August 23, 2012, Rain and Hail loss adjusters looked over plaintiff's crops and assessed their condition. Id. The loss adjuster noted that plaintiff stated he had irrigated his crops one time only when he planted on January 17, 2012, and as a result his field seemed "very dry and water stressed." Administrative Record (AR) 123.

On November 29, 2012, Rain and Hail sent plaintiff a letter denying his claim based on its determination that he had failed to follow GFP. AR 25. Specifically, Rain and Hail blamed the failure of plaintiff's crops on his decision not to properly fertilize and irrigate during the growing season. Id. Plaintiff appealed Rain and Hail's decision to RMA in a letter dated December 21, 2012. AR 53. In support of his appeal plaintiff attached a letter from Ed Vermeulen, a licensed pest control adviser ("PCA") in Mountain House who disputed the idea that plaintiff had not properly irrigated or fertilized his crops. AR 68. Mr. Vermeulen contended that it is GFP to irrigate only once upon planting safflower because further irrigation risks phytophthora (root rot). Id. On May 14, 2013, RMA upheld Rain and Hail's decision. AR 162–71. RMA cited a number of authorities in support of its conclusion that GFPs include irrigation and fertilization. Id. RMA also noted that plaintiff's proffered expert, Mr. Vermeulen, did not meet its definition of an agricultural expert. AR169. Finally, RMA also noted that even Mr. Vermeulen's letter acknowledged that "he does apply Nitrogen to the soil by applying UN-32 as a preplant." Id. Plaintiff requested reconsideration of RMA's decision, but his request was denied based on the agency's determination that he had failed to file a timely request. AR 195–98.

On May 14, 2014, plaintiff filed his complaint in this matter pursuant to 7 C.F.R. § 400.98(e), arguing that RMA's decision was arbitrary and capricious because it was not based on

2

the opinions of qualified experts. ECF No. 1. On December 5, 2014, the court ordered plaintiff to show cause why (1) RMA had been defectively served, and (2) Rain and Hail had yet to be served at all. ECF No. 5. On December 19, 2014, plaintiff responded with proof of proper service upon RMA. ECF No. 6. Plaintiff also explained that he had yet to serve Rain and Hail because it was not a proper party to this suit. Id. Based on plaintiff's response, the court ordered (1) its order to show cause discharged, and (2) plaintiff to file a notice of voluntary dismissal of Rain and Hail from this lawsuit. ECF No. 7. On January 22, 2015, plaintiff filed a notice of voluntary dismissal of Rain and Hail, ECF No. 8, which was adopted by the undersigned on January 26, 2015, ECF No. 9. On February 13, 2015, the remaining defendant, RMA, filed its answer. ECF No. 10. On April 14, 2015, the parties filed a joint status report, ECF No. 12, and on April 27, 2015, the court issued its pretrial scheduling order, EC No. 13. On July 17, 2015, defendant filed the AR in this matter. ECF No. 16.

On October 22, 2015, plaintiff filed his motion for summary judgment. ECF No. 18. On November 23, 2015, defendant filed its opposition and cross-motion for summary judgment. ECF No. 20. On December 21, 2015, plaintiff filed a reply, ECF No. 22, and on January 4, 2016, defendant filed its own reply, ECF No. 23.

LEGAL BACKGROUND

I.   The Crop Insurance Program

When the Federal Crop Insurance Act (FCIA) was passed in 1938, near the end of the dust bowl catastrophe, private insurance companies "apparently deemed all-risk crop insurance too great a commercial hazard." FCIC v. Merrill, 332 U.S. 380, 383 n.1 (1947). So, in order to "improv[e] the economic stability of agriculture through a sound system of crop insurance," 7 U.S.C. § 1502(a), the FCIC, a corporate entity owned by USDA, 7 C.F.R. § 400.701, was empowered to issue crop insurance policies directly to farmers. See Merrill, 332 U.S. at 381–82. In 1980, however, as part of a general trend privatizing governmental functions, the FCIA was amended to require the FCIC, "to the maximum extent practicable," to re insure policies issued by private insurance companies rather than to issue direct policies. P.L. 96–365 (1980) (codified in relevant part at 7 U.S.C. § 1508(a)(1), (k)(1)).

Under the reinsurance system, a farmer-insured purchases insurance from a private insurer, who then pays a reinsurance premium to the FCIC in exchange for reinsurance. 7 C.F.R. § 457.8, Common Crop Insurance Policy. These crop insurance policies only protect against "unavoidable, naturally occurring events," and not other causes of loss, such as "[f]ailure to follow recognized good farming practices for the insured crop." Id. at para. 12. If a private insurer denies a claim, further review is available. The form of that review, however, differs depending on the basis of the insurer's denial. If the producer/insured's claim was denied because of a failure to follow good farming practices, "the insured must file a written request for reconsideration to the following: USDA/RMA/Deputy Administrator for Insurance Services/Stop 0805, 1400 Independence Avenue SW., Washington, DC 20250–0801." 7 C.F.R. § 400.98(d). If RMA upholds the private insurer's denial, the producer cannot request review by the USDA National Appeals Division (NAD). Id. 400.98(b). Instead, the producer must file a claim against the FCIC in the District Court where the subject crop is located that proves the RMA's decision was arbitrary or capricious. Id. 400.98(e), (f); 7 C.F.R. § 457.8, Common Crop Insurance Policy at para. 20(e)(2). The standard of review is that of the Administrative Procedures Act. See e.g., Aageson Grain & Cattle v. U.S. Dep't of Agric., 500 F.3d 1038, 1047 (9th Cir. 2007).[1]

II.     The Administrative Procedure Act

Under the Administrative Procedure Act, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The Supreme Court has held that the ultimate standard of review under 5 U.S.C. § 706(2)(A) is a narrow one, noting that a court is not empowered by section 706(2)(A) to substitute its judgment for that of the agency. Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Ins. Co., 463 U.S. 29, 43 (1983); see also Sierra Pacific Indus. v. Lyng, 866 F.2d 1099, 1105 (9th Cir. 1989). However, the Court also noted that a reviewing court must conduct a searching and careful inquiry into the facts. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971).

---

[1] Aageson is a case involving non-insured crop disaster situations where administrative appeal to the NAD was required. Such an administrative appeal is not required in this case.

The review standards for an APA case have been well stated in a recent Eastern District of California case:

> Under the APA's "arbitrary and capricious" standard, a court must defer to the agency on matters within the agency's expertise, unless the agency completely failed to address some factor, consideration of which was essential to making an informed decision. Nat'l Wildlife Fed'n v. NMFS, 422 F.3d 782, 798 (9th Cir. 2005) ("NWF v. NMFS I"). A court "may not substitute its judgment for that of the agency concerning the wisdom or prudence of the agency's action." River Runners for Wilderness v. Martin, 593 F.3d 1064, 1070 (9th Cir. 2010):
>
>> In conducting an APA review, the court must determine whether the agency's decision is "founded on a rational connection between the facts found and the choices made ... and whether [the agency] has committed a clear error of judgment." Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, 273 F.3d 1229, 1243 (9th Cir. 2001). "The [agency's] action . . . need be only a reasonable, not the best or most reasonable, decision." Nat'l Wildlife Fed. v. Burford, 871 F.2d 849, 855 (9th Cir.1989).
>
> Id.
>
> Although deferential, judicial review under the APA is designed to "ensure that the agency considered all of the relevant factors and that its decision contained no clear error of judgment." Arizona v. Thomas, 824 F.2d 745, 748 (9th Cir. 1987) (internal citation and quotation omitted). "The deference accorded an agency's scientific or technical expertise is not unlimited." Brower v. Evans, 257 F.3d 1058, 1067 (9th Cir. 2001).
>
>> [An agency's decision is] arbitrary and capricious if [it] has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.
>
> Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983); see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971) (reviewing court may

> overturn an agency's action as arbitrary and capricious if the agency failed to consider relevant factors, failed to base its decision on those factors, and/or made a "clear error of judgment"), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).
>
> More generally, "[u]nder the APA 'the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" Humane Soc. of U.S. v. Locke, 626 F.3d 1040, 1048 (9th Cir. 2010) (quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43, 103 S. Ct. 2856). "The reviewing court should not attempt itself to make up for an agency's deficiencies: We may not supply a reasoned basis for the agency's action that the agency itself has not given." Id.

San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv., 819 F. Supp. 2d 1077, 1083 (E.D. Cal. 2011).

III.     Summary Judgement Standards- APA Review

The usual summary judgment standards are not in play here despite the nomenclature given to the motions herein.  As mentioned previously, this case involves review of a final agency determination under the Administrative Procedure Act, 5 U.S.C. § 706; therefore, resolution of this matter does not require fact finding on behalf of this court, nor a determination whether issues of disputed fact exist in the administrative record.  Rather, the court's review is limited to the administrative record. Lands Council v. Powell, 395 F.3d 1019, 1029 (9th Cir. 2005) ("[T]he Supreme Court has expressed a general rule that courts reviewing an agency decision are limited to the administrative record.").  In essence, the court review for "arbitrariness" is a conclusion of law based on the record. San Joaquin River Grp. Auth., 819 F. Supp. 2d at 1083–84 (E.D. Cal. 2011).   In rare cases, review can be expanded beyond the record "if necessary to explain agency decisions." Sw. Ctr. for Biological Diversity v. U.S. Forest Serv., 100 F.3d 1443, 1450 (9th Cir. 1996).  Such supplementing of the record in an APA case can only occur under four narrow exceptions:

> (1) when it needs to determine whether the agency has considered all relevant factors and has explained its decision;
>
> (2) when the agency has relied upon documents or materials not included in the record;

6

(3) when it is necessary to explain technical terms or complex matters; and

(4) when a plaintiff makes a showing of agency bad faith.

Pinnacle Armor, Inc. v. United States, 923 F. Supp. 2d 1226, 1231 (E.D. Cal. 2013) (citing id.). Plaintiff has not moved to supplement the AR.; thus, the entire record is established in this case.

## DISCUSSION

The court finds based on the evidence before it that RMA's decision was *not* arbitrary and capricious. Accordingly, it will recommend that defendant's motion for summary judgment be granted and plaintiff's motion for summary judgment be denied.

Plaintiff argues that defendant's decision he was not following GFP was arbitrary and capricious because it was based on studies conducted outside of the Mountain House area of the San Joaquin Valley (Tracy, CA area), where his farm is located. ECF No. 18 at 2. The fact that these studies were conducted outside of the Mountain House area, plaintiff contends, makes them inapplicable to his farm. Id. The Common Crop Insurance Policy, however, defines GFP as those practices that are "generally recognized by agricultural experts for the area," and "area" is defined as "[l]and surrounding the insured acreage with geographic characteristics, topography, soil types and climatic conditions similar to the insured acreage." 7 C.F.R. § 457.8, Common Crop Insurance Policy at para. 1. Plaintiff does not point to any evidence *in the record* establishing the dissimilarity of Mountain House from other areas in the San Joaquin Valley. Plaintiff does not, for example, point *in the record* to differences in topography, annual rainfall, soil composition, or climate—something, which if established, might have stood as basis for finding the decision of the RMA to be arbitrary. Plaintiff merely argues his *ipse dixit* that the conditions are dissimilar. Accordingly, the court finds that plaintiff has not satisfied *his* burden of establishing facts that the opinions relied upon by defendant were from agricultural experts for the area.

Aside from attacking the legitimacy of the expert opinions relied upon by defendant, plaintiff also asserts that those who are familiar with the land surrounding Mountain House know that his decisions (1) not to irrigate after initially planting his crops, and (2) not to fertilize,

7

Case 2:14-cv-01177-KJM-GGH   Document 25   Filed 01/26/16   Page 8 of 11

1  reflected GFP. ECF No. 18 at 2. In support of his contention plaintiff points to Mr. Vermeulen's
2  letter. Id. at 4–5, AR 67, 68. Mr. Vermeulen's letter expresses support for plaintiff's decision not
3  to water after his safflower was initially planted because doing so exposes the plants to the risk of
4  phytopthera (root rot). AR 67, 68. In addition, Mr. Vermeulen argues that it is widely
5  acknowledged the costs associated with fertilizing are often just not worth the potential benefit to
6  safflower crops. Id.

   There is simply no evidence in the record, however, showing that Mr. Vermeulen satisfies
the definition of "agricultural expert." The Common Crop Insurance Policy defines an
agricultural expert as "[p]ersons who are employed by the Cooperative Extension System or the
agricultural departments of universities, or other persons approved by FCIC, whose research or
occupation is related to the specific crop or practice for which such expertise is sought." 7 C.F.R.
§ 457.8. Mr. Vermuelen, a PCA, does not fall within that definition.[2] Even if Mr. Vermeulen
*were* an agricultural expert under the regulations, RMA's decision not to follow his opinion
would not make its decision arbitrary or capricious. Courts "must defer to a reasonable agency
action 'even if the administrative record contains evidence for and against its decision.'"
Modesto Irrigation Dist. v. Gutierrez, 619 F.3d 1024, 1036 (9th Cir. 2010) (quoting Trout
Unlimited v. Lohn, 559 F.3d 946, 958 (9th Cir. 2009)); see also Nat'l Wildlife Fed. v. Burford,
871 F.2d 849, 855 (9th Cir. 1989) (agency's action "need only be a reasonable, not the best or
most reasonable, decision"); Systech Envtl. Corp. v. United States Envtl. Prot. Agency, 55 F.3d
1466, 1469 (9th Cir. 1995) (if evidence before the agency "provided a rational and ample basis"
for agency's decision, the decision will be upheld under the APA).

   The court finds that defendant has established in light of the weight of authority in the
administrative record that there is no APA review issue as to whether RMA's definition of GFP
was an arbitrary one. According to the record, RMA relied upon three authorities in determining
that the definition of GFP for safflower in the San Joaquin Valley includes both irrigation and

---

[2] Plaintiff also asserts that FCIC's decision not to specially approve Mr. Vermuelen as an expert was arbitrary and capricious. ECF No. 18 at 5. There is no evidence, however, that Mr. Vermuelen ever even sought to be designated such an expert. Defendant also notes that PCAs are not typically considered agricultural experts under § 457.8. ECF No. 20 at 9.

8

fertilization: (1) "Effects of Irrigation Practices on Safflower Yield in San Joaquin Valley" by B. B, Fischer, H. Yamada, and C. R. Pomeroy, published in November 1967 by California Agriculture (AR 75–76); (2) "2011 Sample Costs to Produce Safflower, Sacramento Valley Irrigated Bed Planted and Dryland-Flat Planted," published by the University of California Cooperative Extension (AR 77–90); and (3) "Safflower Production in California," by Stephen R. Kaffka and Thomas E. Kearney, University of California Agriculture & Natural Resources Publication 21565 (AR 138–49). A review of these authorities indicates clear support for defendant's definition of GFP for safflower crops in the San Joaquin Valley both for irrigation, AR 75–76 ("Highest yields of safflower were obtained when a medium preirrigation of 18 inches and two supplemental 8-inch crop irrigations were applied . . . irrigation is necessary before plants show visible stress"); AR 77–90 ("Usually, fields are planted to moisture with one later crop irrigation. . . . Growers should time their irrigation based on actual plant needs."); AR 138-49 ("Safflower can be irrigated, and yields are highest in many locations in California when irrigation is used, even on deep, permeable soils . . . Irrigate before drought symptoms appear."), and fertilization, AR 80 ("Preplant Nitrogen (N) as aqua ammonia (20-0-0) at 100 pounds of N per acre is injected into the beds in March prior to planting."); AR 142 ("Nitrogen is frequently applied in amounts ranging from 75 to 175 pounds per acre (84 to 196 kg/ha) for irrigated safflower . . . ."). Plaintiff's contention that a single PCA's recommendation makes RMA's decision arbitrary and capricious in light of this breadth of authority is simply untenable.[3]

Again, plaintiff put nothing in the administrative record to dispute the validity of the studies and opinions. If plaintiff had for example, submitted evidence of his own past practices concerning lesser irrigation needed for his very localized area than recommended by the studies, or the practices of his neighbor's safflower growing habits which differed substantially from the studies, the RMA would have had to consider such evidence. No such evidence was submitted.

---

[3] However, the court observes that the failure to apply a specific type of fertilizer is probably a red herring. Plaintiff's crop failed, according to the insurance adjustor, not because otherwise healthy plants were stunted by lack of fertilizer, but rather because the entire crop in question had withered from lack of water. The application of fertilizer, or not, was not going to change that fact. The court is unaware from the record that well fertilized fields do not need water.

If plaintiff had submitted contrary studies, the RMA must have considered those as well; no such studies were submitted.

Plaintiff *argues* that he did not irrigate because he was awaiting the winter rainfall (which apparently never came in any significant amount). He and the pest expert argue the common sense proposition that too much water may cause root rot. No one doubts that proposition in the abstract. However, plaintiff submitted no evidence of contemporaneous weather forecasts for the pertinent year predicting substantial rain which he relied upon, and which for some reason never materialized. All we have are the facts on the ground that plaintiff's crop withered from lack of water. It is not enough to generally expect rains in the winter to stand in lieu of GFP.[4]

Plaintiff further argue*s* that the RMA studies/opinions themselves do not assert that the irrigation/fertilization practices recommended are invariable. And it is wise that they do not. Weather conditions are variable, and in years in which significantly greater than normal rainfall occurs, the amount of irrigation necessary may well be much less. Again, however, plaintiff did not demonstrate factually that such a wet year occurred—it did not—or more to the point, that it had been expected by weather experts and failed to occur such that root rot caused by GFP irrigation practices was a real concern.

The court finds that defendant has shown a complete failure of proof as to the alleged arbitrary and capricious nature of its decision and accordingly, it will recommend that defendant's motion for summary judgment be granted.

## CONCLUSION

In accordance with the foregoing, THE COURT HEREBY RECOMMENDS that:

1. Plaintiff's motion for summary judgment, ECF No. 18, be DENIED; and

2. Defendant's motion for summary judgment, ECF No. 20, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days

---

[4] The court also notes defendant's argument that the crop insurance policy in question expressly covered losses from an *irrigated* safflower crop. If it were the general practice in plaintiff's area to irrigate hardly or not at all because of generally expected rainfall, there would have been no need to include the word "irrigated" in the policy.

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 25, 2016

<u>/s/ Gregory G. Hollows</u><br>UNITED STATES MAGISTRATE JUDGE

/GGH17; noce1177.msj